DECISION
This matter is before the Court for a decision on the defendant's motion for a new trial and/or remittitur. The defendant argues that the verdict is grossly excessive and contrary to the law, the evidence and the weight thereof. Defendant also urges this Court to declare that it committed errors of law on nine separate grounds, which mandate a new trial pursuant to Rule 59.
 I. DAMAGES AND LIABILITY
A. Grossly Excessive Damages.
The defendant characterizes the jury's award of $1,250,000.00 to the plaintiff for pain and suffering as the grossly excessive product of passion and prejudice. While defendant concedes that plaintiff suffered numbness and pain following the implant procedure, he argues that the pain has abated and that the numbness is a condition plaintiff has "grown used to." As to plaintiff's present pain and the possibility of permanent injury, defendant asserts that no competent evidence was presented.
The plaintiff, who had been a patient of defendant dentist from 1987 to 1993. testified that the implant procedure was first proposed to her by defendant in 1991. At that time, after defendant explained that two holes would be drilled into her jaw and metal posts inserted, plaintiff decided that she needed time to "think about it."
When a previously loosened tooth failed to improve and chewing became painful, plaintiff decided, in 1993, to undergo implantation of two teeth. She testified that Dr. Payne merely told her that there was a possibility of rejection. Had she been informed that numbness and pain were also risks, she would have declined the surgery.
As soon as the defendant began drilling Mrs. Jiminez experienced "excruciating pain" . . . "it exploded" . . . "I jumped" . . . "I saw stars." Although the defendant injected additional anesthetic, plaintiff continued to endure a "stabbing, unbearable pain" when drilling resumed. Numbness, aching, swelling, and pain persisted through the first post-surgical office visit. Dr. Payne opined that the implants could be too long and that backing them out would alleviate plaintiff's suffering. He also said, to the plaintiff's surprise, that there "could be a little bit of nerve damage." Plaintiff elected to have the implants removed on December 1, 1993 by Dr. Hitchen, who placed her under general anesthesia. Dr. Hitchen explained that the nerve damage had already been done and further alleviation of pain would occur only after complete removal of the nerve.
That procedure was eventually performed by Dr. Day who commenced treatment of the plaintiff in 1996. At that time the plaintiff was still experiencing swelling, and shooting pains and "felt like [she] wanted to rip the left side of [her] face off." Mrs. Jiminez testified that although her condition has significantly improved, she has "never been pain free" and has the sensation of "something crawling on her jaw." Furthermore, she can only eat "what is easy to chew" and must chew on the right side of her mouth. She sometimes has trouble talking and has had to "rearrange her speech" to accommodate for the jaw numbness. This was evident while she was testifying.
There is competent evidence in the record outlining the extent of plaintiff's numbness which is permanent and disfiguring. The defendant's negligence resulted in the infliction of unendurable pain. Moreover, plaintiff had to undergo subsequent surgeries, eventually having her jaw drilled and sawed open so that the very body part defendant damaged could be removed. Most everyone has suffered from the pain of toothaches and drilling procedures. Enduring that pain in its most extreme and relentless form for years, as plaintiff was required to do, is unimaginable.
The jury was instructed that the purpose of damages is to provide fair and adequate compensation to a plaintiff who has been harmed by a defendant's negligence. The jury was specifically instructed by this Court that the purpose of damages in "not to punish a defendant, it is not to send some sort of message to a defendant." Defense counsel objected to plaintiff's closing remark "let him (the defendant) know by your verdict, let him know by the amount this is a serious case." The Court instructed plaintiff's attorney to "avoid punitives." Additionally, the jury was instructed as to what were proper and improper considerations in fashioning an award.
The Court can not say that the jury's award in this case is any more shocking than the description of interminable pain by the credible and sincere plaintiff. The court thus declines to disturb the award and denies the motion for a new trial and or remittitur.
 B. Liability
There is abundant credible evidence from plaintiff's experts that the standard of care was violated. The testimony of Dr. Babbush, who has performed thousands of implants and literally "wrote the book" on the procedure, is sufficient, standing alone, to support the verdict. It matters not that three local dentists testified to the contrary. The jury chose to attribute greater weight to the plaintiff's experts and the Court concurs. Therefore, the motion for a new trial as to liability is denied.
 II. ERRORS OF LAW
A Motion to Strike Plaintiff's Testimony
The defendant complains in this regard that plaintiff was permitted to testify about medical treatment from Drs. Frauks, Cueva, Hiremath, and Klemmendson without competent medical proof. The Court prohibited the introduction of records and deposition testimony of the aforementioned caregivers. The defendant asserts that the plaintiff "specifically described procedures performed by the various doctors and testified at length regarding medications prescribed by them, particularly by Dr. Franks, all for the proposition that their treatment, diagnoses and medications were causally connected to the implant procedure."
The majority of the references to these doctors were contained in plaintiff's cross-examination in response to defense counsel's questions as to whether and when she visited them and whether they prescribed her medication. Nowhere in the record does there appear to be any mention of these doctor's opinions and causal connection of their treatment to the implant procedure. The court is satisfied that the jury is in no way swayed by any "improper" testimony of the plaintiff.
B. Standard of Care and Current Complaints
Defendant asserts as error the Courts failure to sustain his objection to Dr. Babbush's and Dr. Hitchen's testimony concerning present diagnosis and causation, specifically because of their lack of treatment of the plaintiff and because their responses exceeded the scope of information outlined in discovery.
A review of the plaintiff's supplemental answers to interrogatories dated December 30, 1997 and November 11, 1998, indicate respectively, that Dr. Babbush would testify that "the pain and numbness (which is now permanent) was a reasonably foreseeable result of the negligence of Dr. Payne," and, that Dr. Hitchen would testify that "the jaw pain that Mrs. Jiminez hasnow, (emphasis supplied), and has had in the past, is caused by the negligent placing of the implants by Dr. Payne.
Thus, there was no error.
C. Videotape Depositions
Pursuant to Rule 32, the defendant argues that he should have been allowed to introduce selected portions of the videotaped depositions of Drs. Hiermath and Cueva. He wished to prove that the plaintiffs continuing complaints were causally connected to a TMJ disorder and facial myofascial pain syndrome.
It must be noted that the Court sustained the defendant's objection to the admission of the Hiermath and Cueva medical records. The gravamen of the objection was that without testimony that the treatment was causally connected to the instant case, the documents were inadmissible. Defense counsel commented, "if all of the treatment was causally connected to this case and the claim in this case, assuredly his [Dr. Hiremath] deposition would be played."
Given the state of the record, the Court maintains its position that the introduction of isolated portions of the depositions would work an unfair result.
D. Worker's Compensation Claim
This Court rejected defendant's offer of proof to demonstrate that plaintiff settled a claim for a back injury (and permanent injury) and thereafter immediately ceased medical treatment and ingestion of prescription medication. At trial, the Court regarded testimony concerning the compensation claim to be immaterial and irrelevant to a malpractice controversy over dental implants.
Nonetheless, the defense counsel thoroughly cross-examined Mrs. Jiminez about her back injury and the attendant medical care. The jury even beard that Mrs. Jiminez did receive workers' compensation benefits.
For those and the reasons stated in the record, the Court declines to find error.
E. Written Informed Consent
The defendant assails the Court's permission to Drs. Babbush and Hitchen to discuss the use of a written and signed informed consent form. These doctors testified that it was common practice in 1993 to utilize written forms along with a verbal explanation of the procedure and risks. They both acknowledge that it behooves the doctor to secure such a form for self protection because "many patients do not remember what they were told." (Dr. Babbush, "Dental Implants" p. 303)
Ironically, the defendant's own experts testified that they used the form in their own practice. Dr. Sammartino testified that in 1993 he was using the form to protect himself as recommended by the American Association of Oral and Maxilla facial Surgeons. Dr. Gordon said "I use written informed consent to cover myself," even though be believed that a verbal discussion was adequate to comport with the standard of care.
Moreover, the jury was instructed that the duty of the physician was to disclose all known material risks. The jurors were never told that a written form was required. Certainly they could consider the absence of such a form as bearing on the weight to be attributed to the defendant's testimony.
In light of the entire record, there was nothing prejudicial or unfair about the admission of this testimony.
F. Jury Verdict Form
This very simple form merely asked: (1) on the claim of informed consent, do you find for the plaintiff or the defendant?; (2) On the claim of malpractice, do you find for the plaintiff or the defendant?
The Court cannot discern on what basis defendant's proffered form should have been utilized. There was nothing ambiguous about the Court's verdict form.
G. Motion to Pass
For the reasons stated in section I (A), the Court finds no error.
H. Jury Instructions
The Court stands on the record below.